IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **FEDERAL NATIONAL MORTGAGE ASSOCIATION,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:13-CV-2781-L** |
| **K.O. REALTY, INC. d/b/a K.O. REAL ESTATE,** | § § § | |
| Defendant. | § § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is Fannie Mae's Motion to Dismiss K.O. Realty, Inc.'s First Amended Counterclaims (Doc. 30), filed February 14, 2014. After carefully considering the motion, briefs, pleadings, and applicable law, the **grants** Fannie Mae's Motion to Dismiss K.O. Realty, Inc.'s First Amended Counterclaims (Doc. 30) as herein set forth.

**I.      Factual and Procedural Background**

Plaintiff Federal National Mortgage Association ("Fannie Mae" or "Plaintiff") brought this action against Defendant K.O. Realty, Inc. d/b/a K.O. Real Estate ("K.O." or "Defendant") on July 17, 2013, seeking a declaratory judgment regarding the parties' respective rights and obligations under a May 1, 2011 "Master Listing Agreement" ("MLA"). Specifically, Fannie Mae seeks an order "declaring that [it] followed the proper procedures and possessed a valid, legal right to terminate its broker contract with K.O. 'without cause' in accordance with the express terms of the [May 1, 2011] MLA." Pl.'s Compl. ¶ 15. Fannie Mae's Original Complaint ("Complaint") alleges as follows in support of its request for a declaratory judgment:

**Memorandum Opinion and Order - Page 1**

5.      Based in Dallas, Fannie Mae's Real Estate Asset Management group is responsible for the maintenance and disposition of properties acquired throughout the United States and its Territories through foreclosures and deeds-in-lieu of foreclosure. These properties are referred to as "real estate owned" ("REO").

6.      Fannie Mae retains licensed real estate brokers to market and sell REO properties.

7.      A Master Listing Agreement ("MLA") is required to be executed between Fannie Mae and each broker retained to market and sell REO properties.

8.      K.O. is an REO broker that was engaged to market and sell REO properties for Fannie Mae. K.O. executed an MLA with an effective date of May 1, 2011. Karen O. Frisone ("Frisone") is the managing broker-owner of K.O., who signed the MLA and its Amendment for K.O.

9.      Section 24(H) of the MLA states that the MLA and performance thereunder "shall be governed by the laws of the State of Texas." (Exhibit 1) Additionally, that same section requires that "[a]ny and all disputes between the parties that cannot be settled by mutual agreement shall be resolved solely and exclusively in the courts located within the County of Dallas, Texas." (*Id.*)

10.     Section 7(A) of the MLA explicitly permits Fannie Mae to terminate the contract "without cause." (Exhibit 1)

11.     Fannie Mae sent a termination notice to K.O. that specified an effective termination date of June 6, 2013.

12.     On July 16, 2013, Frisone, through counsel, sent a three-page demand letter to Fannie Mae asserting that the termination of the MLA was unlawful. Specifically, the July 16 letter alleges claims against Fannie Mae for "retaliation in violation of the [Federal] False Claims Act . . ., breach of contract, and various other common law claims." The letter also requests that Fannie Mae preserve "potential evidence" relating to those alleged claims. So, there exists a dispute regarding the right of Fannie Mae to terminate the MLA of K.O. "without cause" and its exercise of that right.

*Id.* ¶¶ 5-12 (footnotes omitted).

**Memorandum Opinion and Order - Page 2**

On November 27, 2013, K.O. filed its "Original Answer and Counterclaim," which included counterclaims for alleged violations of the False Claims Act ("FCA"), breach of contract, quantum meruit, abuse of process, and unjust enrichment. K.O. also asserted a declaratory judgment claim under the Texas Civil Practice and Remedies Code and requested an order from the court declaring that: (1) Fannie Mae did not properly terminate the May 1, 2011 MLA; and (2) Fannie Mae entered into a new MLA with K.O. on July 11, 2013, and that this subsequent MLA remains in effect. K.O. seeks to recover damages, reasonable attorney's fees, and costs.

The essence of K.O.'s counterclaims and declaratory judgment action is that Fannie Mae terminated the May 2011 MLA in retaliation for its complaints (to Fannie Mae) that other brokers in Colorado were receiving more listings than K.O. K.O. contends that Fannie Mae unreasonably delayed in approving its property repair requests and, as a result, it was unable to finalize the property repairs and list and sell the properties. K.O. therefore asserts that it was prevented from earning a sales commission on the properties assigned to it and also incurred other expenses, for which it has not been reimbursed, in rehabilitating the properties and inspecting the properties to determine whether repairs were needed.

On January 14, 2014, Fannie Mae moved to dismiss all of K.O.'s counterclaims. On January 28, 2014, K.O. filed its "First Amended Answer and Counterclaim." On February 14, 2014, Fannie Mae moved to dismiss K.O's counterclaims for alleged FSA violations, breach of contract, and quantum meruit, as well as K.O.'s request for declaratory judgment. Briefing on the motion was complete on March 13, 2014, after Fannie Mae filed its reply in support of the motion to dismiss. On July 10, 2014, Fannie Mae filed a "Supplement to its Motion to Dismiss K.O. Realty, Inc.'s First Amended Counterclaims" (Doc. 41) ("Supplement"). In response, K.O. contends that the

Supplement includes a ground for dismissal of its FCA claim that was not previously included in Fannie Mae's motion to dismiss.  K.O. also disagrees with the legal arguments asserted by Fannie Mae in the Supplement.  Fannie Mae filed a reply in support of its Supplement on July 23, 2014.[1]

## II.     Standard Applicable to Motion to Dismiss

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*  (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.

---

[1] The court does not address the parties' FSA arguments that were raised in connection with Plaintiff's Supplement, as resolution of the issue raised in the Supplement is not necessary for the disposition of the motion to dismiss K.O.'s FSA claim.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355

F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion,

its task is to test the sufficiency of the allegations contained in the pleadings to determine whether

they are adequate enough to state a claim upon which relief can be granted.  *Mann v. Adams Realty*

*Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th

Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial

of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof

to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

## III.     Analysis

### A.     False Claims Act

K.O.'s alleges a claim based on retaliation under section 3730(h) of the FCA.  According to

K.O., Fannie Mae's procedure for assigning properties to brokers limits the number of assignments

that a particular brokerage office can receive, and, as a result, brokers who share a brokerage office

receive fewer property assignments than those who maintain separate offices.  K.O. alleges that the

"The Powers Group" obtained a substantially larger number of property assignments than K.O. by

listing different office addresses for the group's two member brokers.  K.O. further alleges that it

investigated and discovered that no building for one of the office addresses listed by The Powers

Group existed.  K.O. alleges that, in light of the volume of properties assigned to the Powers Group,

it was concerned that The Powers Group "could not properly preserve and maintain the Fannie Mae

assets given the size of its office."  Def.'s Answer and Counterclaim 5.  K.O. alleges that it therefore

reported to Fannie Mae its concern regarding The Power Group's "fraudulent activity" or "fraudulent

circumvention of Fannie Mae['] policies and the fake office." *Id.* at 5-8.  K.O. contends that because

of the fake office, The Powers Group was able to fraudulently obtain a separate vendor number,

which allowed them to fraudulently submit claims to Fannie Mae for payment.  K.O. alleges that because of its long relationship with Fannie Mae, it was aware that Fannie Mae was required to make complete and accurate reports to the federal government about its business practices to receive funding.  In addition, K.O. alleges that, because it "knew preservation of assets was a key Fannie Mae concern," it tried to explain to Fannie Mae "how [The Power Group's] fraudulent activity harmed Fannie Mae's assets, increased holding costs and caused lost equity."  *Id.* at 5-6.

The FCA imposes civil liability on those who "knowingly make[], use[], or cause[] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."  *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 192 (5th Cir. 2009) (quoting 31 U.S.C. § 3729(a)).  To enforce this prohibition, section 3730(h) of FCA creates a cause of action for anyone retaliated against, with respect to the terms and conditions of their employment, for attempting to prevent an FCA violation. 31 U.S.C. § 3730(h).[2]  To bring a retaliation claim under § 3730(h), a plaintiff does not need to allege or prove that the defendant submitted a false claim to the government; rather, a plaintiff need only allege retaliation by the defendant because the plaintiff engaged in protected activity, that is, "acts done  . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."  31 U.S.C. § 3730(h)(1); *see also Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416

--------

[2] Section 3730(h)(1) of the FCA specifically provides as follows:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others *in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter*.

31 U.S.C. § 3730(h)(1) (emphasis added).  Section 3730(h) was amended by Congress in 2009 to extend protection from retaliation to contractors and agents that was previously afforded only to employees.

& n.1 (2005) ("proving a violation of § 3729 is not an element of a § 3730(h) cause of action"). Thus, an actual possibility of success on the underlying FCA claim is not a prerequisite to bringing or prevailing on a retaliation claim under section 3730(h) of the FCA. *See id.*

"A protected activity is one motivated by a concern regarding fraud against the government." *Thomas v. ITT Educ. Servs., Inc.,* 517 F. App'x 259, 262 (5th Cir. 2013) (citing *Riddle v. Dyncorp Int'l, Inc.*, 666 F.3d 940, 941 (5th Cir. 2012)). While proving a violation of section 3729 is not a prerequisite to a retaliation claim, to engage in protected activity, a retaliation plaintiff's actions must be aimed at matters that either "reasonably could lead" to a viable claim under the FCA or demonstrate a "distinct possibility" of litigation under the FCA. *See United States ex rel. George v. Boston Scientific Corp.*, 864 F. Supp. 2d 597, 605 (S.D. Tex. 2012) (collecting cases).

Fannie Mae contends that K.O.'s FCA claim fails because K.O. acknowledges in its response to the motion to dismiss that its claim is based on its complaints to Fannie Mae regarding third-party brokers submitting fraudulent claims for payment to Fannie Mae or its complaints about third-party brokers fraudulently inducing Fannie Mae to enter into vendor relationships. The court agrees.

While K.O. contends that Fannie Mae is a governmental entity and that Fannie Mae was defrauded, it does not contend that Fannie Mae submitted any fraudulent claims for payment to the government or committed fraud against the government. Def.'s Resp. ("K.O. does not contend that Fannie Mae made false claims to the government."). K.O.'s retaliation claim instead is and has always been based on its contention that K.O.'s competitor, The Powers Group, defrauded Fannie Mae by circumventing its policies regarding the manner in which properties are assigned to brokers. K.O. contends that "[w]hile the most common scenario to be expected would be complaints that the plaintiff's employer as the entity making fraudulent claims against the government, the statutory

language imposes no such requirement." *Id.* at 7.  K.O. therefore contends that the "FCA does not deny anti-retaliation protection to a contractor such as [itself], [which] reported third party fraud against a [governmental entity] such as Fannie Mae."  *Id.* at 7-8.

The cases cited by K.O. do not support its contention that section 3730(h) applies to retaliation claims against a defendant when the plaintiff alleges that someone other than the defendant ultimately engaged in fraud against the government.  Moreover, even if the court agreed with K.O.'s interpretation of section 3730(h), K.O.'s retaliation claim still fails because its actions in investigating and reporting The Power Group's allegedly fraudulent activity to Fannie Mae could not have reasonably led to a viable claim under the FCA against either The Powers Group or Fannie Mae.  The manner in which the properties were assigned and distributed among The Powers Group, K.O., and other brokers in Colorado did not affect the total number of properties owned by Fannie Mae that were available for assignment and sale at any given time.  Thus, any actions taken by The Power Goup to obtain additional property listings, even if done in violation of Fannie Mae's internal procedures for such assignments, might have resulted in The Powers Group receiving more commissions and profit than K.O. and other brokers.  Fannie Mae's profits or the amount of commissions it paid brokers, however, would not have necessarily been affected simply because The Power Group, rather than K.O. or another broker, listed and sold a property assigned to it, and K.O.'s assertion that Fannie Mae suffered financial harm, because the Powers Group received more property assignments than it and other brokers, is conclusory and not supported by any factual allegations.  Further, K.O. does not allege that The Powers Group solicited or otherwise caused Fannie Mae to pay it for services or commissions that were not performed or earned.  Fannie Mae is therefore entitled to dismissal of K.O.'s retaliation claim under section 3730(h) of the FCA.

**Memorandum Opinion and Order - Page 9**

## B.      Breach of Contract

Fannie Mae contends that K.O.'s contract claim fails because K.O. does not indicate in its pleadings the provision of the contract that Fannie Mae is alleged to have breached.  In addition, Fannie Mae contends that K.O.'s contract claim misconstrues its obligations under the REO Sales Guide.[3]  Fannie Mae contends that, while K.O. characterizes its obligation to review and approve broker repair requests as a "commitment," the REO Sales Guide in effect at the time indicate that Fannie Mae's obligation in this regard is merely a "goal," not a contractual requirement.   Mot. 17. Fannie Mae therefore contends that K.O.'s contract claim should be dismissed.

K.O. disagrees and contends that its amended pleading is sufficient to state a breach of contract claim:

> 64.    The breaches of contract K.O. cites to include the obligation in the MLA ¶ 4(G)(2). (Amended Counterclaim ¶ 124). K.O.'s pleading makes it clear that K.O. and Fannie Mae had an enforceable contract and that Fannie Mae had a duty to comply with the terms. K.O. contends that Fannie Mae did not comply with MLA ¶ 4(G)(2). (Amended Counterclaim ¶[¶] 124-125).

> 65.    Contrary to Fannie Mae's argument, K.O.'s breach of contract claim is not premised solely on Fannie Mae's failure to approve the repair requests within the five day commitment window in the REO Sales Guide. While K.O. references that obligation, K.O. also references Fannie Mae's failure to meet its contractual obligation under ¶ 4(G)(2) to timely perform all services. (Amended Counterclaim, ¶ 124).

Def.'s Resp. 20.

The parties agree that Texas law applies to K.O.'s state law claims.  The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or

---

[3] The MLA states that the parties' relationship is governed by it and Fannie Mae's REO Sales Guide, which, among other things, provides brokers with guidance regarding the bid and repair process.

tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

Section 4(G)(2) of the MLA, referenced in K.O.'s pleadings and in response to Fannie Mae's motion to dismiss, provides: "Time is of the Essence. All Services shall be performed promptly, in accordance with the schedule and service level commitments set forth in the REO Sales Guide." Pl.'s Compl. (Doc.1-1 at ¶ 4(G)(2)).[4]  The language in the REO Sales Guide referenced by Fannie Mae provides the following regarding the monitoring of repair bids: "Fannie Mae's goal is to review and approve repairs within one (1) to five (5) business days of receiving your Repair Bid Package submission."  Pl.'s App. 2, 5, and 7.  The court agrees with Fannie Mae that section 4(G)(2) of the MLA, particularly when read in conjunction with the aforementioned language in the REO Sales Guide, does not impose any requirement on Fannie Mae to review and approve repair requests within a certain time frame.  Moreover, the March 2012 REO Sales Guide provides that Fannie Mae is under no obligation to approve proposed repair requests.  *Id.* at 3 ("The proposed repair requests must align with the property's marketing strategy. *After reviewing the proposed repairs, Fannie Mae may deny the full scope of, or partial repairs, and list As-Is.*") (emphasis added).  Thus, regardless of Fannie Mae's timing in reviewing the repairs submitted by K.O., there was no guarantee that the proposed repairs would be approved.

Additionally, the term "Services" used in section 4(G)(2) is defined in the MLA as "tasks performed or to be performed by Broker under this Agreement,"  Pl.'s Compl. (Doc. 1-1 at 24), and

---

[4] K.O. attached to its Answer and Counterclaims Doc. 1-1, which consists of the MLA that is attached to Plaintiff's Complaint as Exhibit 1.  The court therefore cites herein to Doc. 1-1 when citing to the MLA.

**Memorandum Opinion and Order - Page 11**

K.O. acknowledges that section 4(G)(2) applies to services performed by brokers.  Def.'s Answer and Counterclaims ¶ 104 ("Per the MLA, time is of the essence and the broker must perform all services promptly. (MLA ¶ 4(G)(2)").  Thus, section 4(G)(2) applies to "Services" performed by K.O. as a broker, not Fannie Mae.  Such an interpretation is consistent with the rest of the MLA, which only uses the term "Services" in conjunction with those provided by brokers or others working on their behalf.  K.O.'s contract claim based on the "time is of the essence" language in section 4(G)(2) of the MLA therefore fails as a matter of law and will be dismissed with prejudice.

C.     **Quantum Meruit**

Fannie Mae contends that K.O.'s counterclaim based on quantum meruit fails under Texas law because K.O. acknowledges that the MLA is the basis for its contract claim.  K.O. counters that recovery under quantum meruit is permitted despite the existence of a valid contract that covers a claim when a plaintiff has partially performed an express contract but, because of the defendant's breach, was prevented from completing the contract.  For support, K.O. cites *Truly v. Austin*, 744 S.W.2d 934, 939 (Tex. 1988); and this court's opinion in *Balfour Beatty Rail, Incorporated. v. Kansas City Southern Railway Company*, No. 3:10-CV-1629-L, 2012 WL 3100833, at *9 (N.D. Tex. July 31, 2012).  K.O. contends that its amended pleadings clarify that its quantum meruit claim is based on the foregoing exception.

"Quantum meruit is a theory of recovery based on principles of unjust enrichment."  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 762 (N.D. Tex. 2012) (citation omitted).  "In general under Texas law, a party seeking to recover for services rendered will only be able to recover under quantum meruit when there is no express contract between the parties." *U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 406 (5th Cir. 2000) (citing *Truly*, 744 S.W.2d at 936).  "Therefore,

a plaintiff may not recover under the general rule of quantum meruit when the claim pleaded fits within the subject matter of a contract between the parties," unless the claim falls within one of the two exceptions recognized by *Truly*: (1) "[r]ecovery in quantum meruit is allowed when a plaintiff has partially performed an express contract but, because of the defendant's breach, the plaintiff is prevented from completing the contract"; and (2) quantum meruit recovery is sometimes allowed when a plaintiff partially performs an express contract that also happens to be unilateral in nature." *U.S. Quest Ltd.*, 228 F.3d at 406 (quoting *Truly*, 744 S.W.2d at 936-37).

As previously noted, the REO Sales Guidelines give Fannie Mae complete discretion to deny repair requests by brokers. The REO Sales Guidelines further provide that Fannie Mae is not required to reimburse brokers for repairs not approved by it. Thus, to the extent K.O. performed repairs not approved by Fannie Mae, they are not entitled to reimbursement. Moreover, the MLA addresses the parties' obligations upon termination or expiration of the contract and sets forth the circumstances under which a broker is entitled to reimbursement of expenses incurred prior to the expiration or termination of the contract with or without cause. *See* Pl.'s Compl. (Doc. 1-1 at 11-12). Finally, the MLA permits Fannie Mae to terminate the contract with or without cause at any time. For these reasons, the court determines that any claim by K.O. to recover expenses allegedly incurred prior to the termination of the parties' contract is covered by the express terms of the MLA. Further, because the parties' contract was terminable with or without cause by either party, the court determines that the quantum meruit exception relied on by K.O. does not apply, as application of this exception would change the parties' bargained-for agreement under the MLA. The court will therefore dismiss with prejudice K.O.'s quantum meruit claim.

### D.    Declaratory Judgment

When considering a declaratory judgment action, a district court must engage in the following three-step inquiry to determine: (1) whether the declaratory action is justiciable; (2) whether the court has "authority" to grant the requested declaratory relief; and (3) whether to exercise its broad discretion to decide or dismiss the action. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). Justiciability in the declaratory judgment context is typically an issue of ripeness, that is, whether an actual controversy exists such that the court has subject matter jurisdiction. *Id.* at 895-96. "[A]n actual controversy exists where a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Id*. at 896 (citation, brackets, and internal quotation marks omitted). If the controversy is "abstract or hypothetical," the court should dismiss the case for lack of ripeness. *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). The question of whether an actual controversy exists is a question of law. *Orix Credit Alliance, Inc*., 212 F.3d at 895. If the court determines that the declaratory action is not justiciable, the inquiry ends here. *Id.* Because the ripeness of a request for declaratory judgment is jurisdictional, the court must consider the issue *sua sponte* even in the absence of any challenge by the parties. *See id.*; *United Transp. Union*, 205 F.3d at 857. When jurisdiction is based on diversity of citizenship, the court has authority to decide a declaratory judgment action. *See Sherwin-Williams Co. v. Holmes Cnty*., 343 F.3d 383, 387 (5th Cir. 2003) (holding that district court had authority to decide declaratory judgment suit where there was diversity jurisdiction). In deciding whether to decide or dismiss a declaratory action, courts consider the following factors:

(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3) whether the plaintiff engaged in forum shopping in bringing the suit;

(4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5) whether the federal court is a convenient forum for the parties and witnesses;

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Id.* at 388 (citation omitted).

Fannie Mae contends that K.O.'s request for a declaratory judgment under the Texas Declaratory Judgment Act is governed by the federal Declaratory Judgment Act, which unlike the Texas Act, does not permit a party to recover attorney's fees.  Fannie Mae further contends that K.O.'s request for an order, declaring that Fannie Mae improperly terminated the MLA, is the mirror image of its request for declaratory judgment and therefore should be dismissed.  Finally, Fannie Mae contends that K.O.'s request for an order, declaring that the parties entered into a new MLA on July 11, 2013, that is still in effect, should be dismissed because K.O.'s pleadings fail to sufficiently identify the contract and terms that are the subject of its request in this regard.

K.O. counters that its request for a order declaring that the MLA was improperly terminated is not the sole basis for its declaratory judgment action; in addition, it has also asked the court to declare that the July 11, 2013 MLA is in effect.  K.O. further asserts that it has identified the contract

that is the subject of this request – the July 11, 2013 MLA.  K.O. requests the opportunity to submit a complete copy of the July 11, 2013 MLA if the court determines it is necessary.

"When a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202." *Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 750 n.6 (N.D. Tex. 2013) (quoting *Garrett v. HSBC Bank USA, N.A.*, No. 3:12-CV-0012–D, 2012 WL 1658796, at *2 n.2 (N.D. Tex. May 11, 2012)).  Thus, any declaratory judgment action by K.O. is governed by the federal Declaratory Judgment Act.

Regarding the first basis for K.O.'s requested declaratory judgment – whether Fannie Mae improperly terminated the MLA – the court concludes that while this issue is ripe and the court has authority to decide it, K.O.'s request for a declaratory judgment on this ground fails for other reasons.  First, as Fannie Mae correctly notes, the federal Declaratory Judgment Act does not provide for the recovery of attorney's fees.  Moreover, the MLA expressly states that the parties in any litigation or proceeding shall bear their own attorney's fees and costs incurred in such proceeding, and that the parties "waive any right or claim for the award of statutory attorneys' fees, including but not limited to awards pursuant to chapters 37 or 38 of the Texas Civil Practice & Remedies Code." Pl.'s Compl. (Doc. 1-1 at 22).  Accordingly, K.O. is not entitled to recover its attorney's fees and costs as a result of its declaratory judgment action, although such relief was requested.

Further, district courts in this Circuit regularly reject declaratory judgment claims seeking the resolution of issues that are the mirror image of and will be resolved as part of other claims in the lawsuit.  *See American Equip. Co., Inc. v. Turner Bros. Crane and Rigging, LLC*, No. 4:13-CV-2011, 2014 WL 3543720, at *4 (S.D. Tex. July 14, 2014) (collecting cases). K.O.'s request

**Memorandum Opinion and Order - Page 16**

for declaratory judgment that the MLA was improperly terminated by Fannie Mae is the mirror image of Fannie Mae's requested declaratory judgment and does not introduce any new facts or issues. Because K.O.'s request for declaratory judgment in this regard is duplicative, the court will dismiss it with prejudice because it serves no useful purpose and does not serve the purposes of judicial economy. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.").

Regarding the second basis for K.O.'s request for a declaratory judgment, the court determines that its reference to the specific July 11, 2013 MLA is sufficient at this stage of the litigation for purposes of Federal Rule of Civil Procedure 8. As previously noted, however, a federal court, may not decide a request for declaratory judgment in the absence of an actual controversy. *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (concluding that the declaratory plaintiff must establish that an actual controversy existed when the complaint was filed). The court *sua sponte* concludes that there is no indication from K.O's pleadings that a controversy exists with respect to the July 11, 2013 MLA, and that any controversy as to this MLA is therefore abstract or hypothetical. Thus, any order by this court declaring the July 11, 2013 MLA in effect as requested by K.O. would be merely advisory. Accordingly, K.O.'s request for a declaratory judgment on this ground is not ripe, and the court will dismiss it without prejudice for lack of subject matter jurisdiction. The court, however, will allow K.O. to amend its pleadings with respect to its request for declaratory judgment based on the July 11, 2013 MLA.

IV.     **Amendment**

K.O. requests to amend its pleadings with respect to its counterclaims in the event the court determines that it has failed to state claims upon which relief can be granted.  K.O. previously amended its pleadings once but did not have the benefit of the court's analysis.  The court nevertheless determines for the reasons discussed that the counterclaims by K.O. that are addressed in this opinion, except for its request for declaratory judgment with respect to the July 11, 2013 MLA, fail as a matter of law.  Any attempts at amendment as to these claims would be futile and would unnecessarily delay resolution of these claims.  Moreover, K.O. has not explained how it would cure the deficiencies noted in Fannie Mae's motion to dismiss.  Accordingly, K.O. will not be allowed to amend its pleadings with respect to the counterclaims that the court has found to be deficient as pleaded.  The court, however, will allow K.O. to amend its pleadings with respect to its request for a declaratory judgment regarding the July 11, 2013 MLA.

V.     **Conclusion**

For the reasons herein stated, the court **grants** Fannie Mae's Motion to Dismiss K.O. Realty, Inc.'s First Amended Counterclaims (Doc. 30) for alleged FSA violations, breach of contract, and quantum meruit and **dismisses with prejudice** these claims.  The court also **dismisses with prejudice** as duplicative K.O.'s request for declaratory judgment with respect to the May 2011 MLA.  The court **dismisses without prejudice** K.O.'s request for declaratory judgment with respect to the July 11, 2013 MLA but will allow K.O. to amend its pleadings as to this claim to cure the jurisdictional deficiencies noted.  K.O. shall amend its pleadings with respect to this claim by **August 15, 2014.**  *Failure to do so will result in dismissal of its remaining declaratory judgment claim without prejudice pursuant to Federal Rule of Civil Procedure 41(b) or Rule 12(b)(1).*

**It is so ordered** this 8th day of August, 2014.

Sam A. Lindsay
United States District Judge