IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **FEDERAL NATIONAL MORTGAGE ASSOCIATION,** | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV-2781-L** |
| | § | |
| **K.O. REALTY, INC. d/b/a K.O. REAL ESTATE,** | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is K.O. Realty, Inc.'s Motion for Leave to Amend Complaint (Doc. 54), filed August 22, 2014; Fannie Mae's Motion to Dismiss K.O. Realty, Inc.'s Second Amended Counterclaims (Doc. 59), filed September 12, 2014; Fannie Mae's Motion to Strike Expert Witness Designations (Doc. 61), filed September 12, 2014; and K.O. Realty, Inc.'s Motion for Partial Summary Judgment (Doc. 73), filed November 14, 2014.  After carefully considering the motions, briefs, pleadings, evidence, record, and applicable law, the court **grants** Fannie Mae's Motion to Dismiss K.O. Realty, Inc.'s Second Amended Counterclaims (Doc. 59); **denies** K.O. Realty, Inc.'s Motion for Partial Summary Judgment (Doc. 73); **denies** K.O. Realty, Inc.'s Motion for Leave to Amend Complaint (Doc. 54); and **denies as moot** Fannie Mae's Motion to Strike Expert Witness Designations (Doc. 61).   The court also **grants** Fannie Mae's unopposed motion to dismiss its request for a declaratory judgment, and **dismisses without prejudice** its request for declaratory judgment pursuant to Federal Rule of Civil Procedure 41(a)(2).

## I.      Factual and Procedural Background

Plaintiff Federal National Mortgage Association ("Fannie Mae" or "Plaintiff") brought this action against Defendant K.O. Realty, Inc. d/b/a K.O. Real Estate ("K.O." or "Defendant") on July 17, 2013, seeking a declaratory judgment regarding the parties' respective rights and obligations under a May 1, 2011 "Master Listing Agreement" ("May 1, 2011 MLA").[1]  Specifically, Fannie Mae seeks an order "declaring that [it] followed the proper procedures and possessed a valid, legal right to terminate its broker contract with K.O. 'without cause' in accordance with the express terms of the [May 1, 2011] MLA."  Pl.'s Compl. ¶ 15.  Fannie Mae's Original Complaint ("Complaint") alleges as follows in support of its request for a declaratory judgment:

5.      Based in Dallas, Fannie Mae's Real Estate Asset Management group is responsible for the maintenance and disposition of properties acquired throughout the United States and its Territories through foreclosures and deeds-in-lieu of foreclosure. These properties are referred to as "real estate owned" ("REO").

6.      Fannie Mae retains licensed real estate brokers to market and sell REO properties.

7.      A Master Listing Agreement ("MLA") is required to be executed between Fannie Mae and each broker retained to market and sell REO properties.

8.      K.O. is an REO broker that was engaged to market and sell REO properties for Fannie Mae. K.O. executed an MLA with an effective date of May 1, 2011. Karen O. Frisone ("Frisone") is the managing broker-owner of K.O., who signed the [May 1, 2011] MLA and its Amendment for K.O.

9.      Section 24(H) of the MLA states that the [May 1, 2011] MLA and performance thereunder "shall be governed by the laws of the State of

_____

[1] Fannie Mae's pleadings do not indicate whether declaratory relief is sought pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, or the Texas Declaratory Judgment Act ("Texas DJA"), Chapter 37 of the Texas Civil Practice and Remedies Code.  The federal Declaratory Judgment Act authorizes federal courts to provide declaratory relief but does not itself confer jurisdiction on the federal courts. *Jolly v. United States*, 488 F.2d 35, 36 (5th Cir. 1974).  Accordingly, jurisdiction is this case is based on diversity of citizenship.

Texas." (Exhibit 1) Additionally, that same section requires that "[a]ny and all disputes between the parties that cannot be settled by mutual agreement shall be resolved solely and exclusively in the courts located within the County of Dallas, Texas." (*Id.*)

10.     Section 7(A) of the [May 1, 2011] MLA explicitly permits Fannie Mae to terminate the contract "without cause." (Exhibit 1)

11.     Fannie Mae sent a termination notice to K.O. that specified an effective termination date of June 6, 2013 [for the May 1, 2011 MLA].

12.     On July 16, 2013, Frisone, through counsel, sent a three-page demand letter to Fannie Mae asserting that the termination of the [May 1, 2011] MLA was unlawful. Specifically, the July 16 letter alleges claims against Fannie Mae for "retaliation in violation of the [Federal] False Claims Act . . ., breach of contract, and various other common law claims." The letter also requests that Fannie Mae preserve "potential evidence" relating to those alleged claims. So, there exists a dispute regarding the right of Fannie Mae to terminate the [May 1, 2011] MLA of K.O. "without cause" and its exercise of that right.

*Id.* ¶¶ 5-12 (footnotes omitted).

On November 27, 2013, K.O. filed its "Original Answer and Counterclaim," which included counterclaims for alleged violations of the False Claims Act ("FCA"), breach of contract, quantum meruit, abuse of process, and unjust enrichment.   K.O. also asserted a declaratory judgment claim under the Texas Civil Practice and Remedies Code[2] and requested an order from the court declaring that: (1) Fannie Mae did not properly terminate the May 1, 2011 MLA or, more specifically, that the June 6, 2013 termination notice sent by Fannie Mae did not terminate the May 1, 2011 MLA; and

---

[2] In its prior opinion, the court mistakenly concluded that K.O.'s request for a declaratory judgment under Texas law was converted to one under the federal Declaratory Judgment Act.  The court's conclusion in this regard, however, does not affect its prior ruling as to K.O.'s request for declaratory judgment because the Texas DJA functions solely as a procedural mechanism for resolving substantive "controversies which are already within the jurisdiction of the courts." *Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) (quoting *Housing Auth. v. Valdez*, 841 S.W.2d 860, 864 (Tex. App.—Corpus Christi 1992, writ denied)). Unlike Texas substantive law, Texas procedure does not govern in a diversity action such as this; rather, "[u]nder the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."  *Id.* (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).

(2) Fannie Mae entered into a new MLA with K.O. on July 11, 2013 ("July 11, 2013 MLA").  K.O. requested to recover damages, reasonable attorney's fees, and costs.

The essence of K.O.'s original counterclaims and declaratory judgment action is that, after K.O.'s managing broker-owner Karen Frisone ("Frisone") reported to Fannie Mae in September 2012 that she believed that other brokers had engaged in fraudulent conduct and were receiving more listings than K.O., Fannie Mae retaliated against K.O.  K.O. contends that Fannie Mae initially retaliated by reducing the number properties assigned to K.O. and, after June 6, 2013, removed all properties assigned to K.O. and refused to assign any additional properties to it.  As reflected by Fannie Mae's request for a declaratory judgment and K.O.'s original request for a declaratory judgment, the parties dispute whether Fannie Mae's June 6, 2013 letter was sufficient under Texas law to terminate the May 1, 2011 MLA.

On January 14, 2014, Fannie Mae moved to dismiss all of K.O.'s counterclaims.  On January 28, 2014, K.O. filed its "First Amended Answer and Counterclaim," which mooted Fannie Mae's motion to dismiss.  In its First Amended Counterclaim(s), K.O. continued to maintain that Fannie Mae's June 6, 2013 termination of the May 1, 2011 MLA was ineffective, and that Fannie Mae retaliated against K.O. after Frisone reported that other brokers had allegedly engaged in fraudulent conduct.

On February 14, 2014, Fannie Mae moved to dismiss K.O's first amended counterclaims for alleged FSA violations, breach of contract, and quantum meruit, as well as K.O.'s request for a declaratory judgment.  On August 8, 2014, the court granted Fannie Mae motion to dismiss all of K.O.'s counterclaims but allowed K.O. to amend its pleadings as to its request for a declaratory judgment regarding the July 11, 2013 MLA.  Regarding the first basis for K.O.'s requested

declaratory judgment—whether the June 6, 2013 termination notice sent by Fannie Mae terminated the May 1, 2011 MLA—the court concluded that dismissal was appropriate because this request for a declaratory judgment was the mirror image of the declaratory judgment sought by Fannie Mae. Regarding the second basis for K.O.'s request for a declaratory judgment—whether Fannie Mae entered into a new MLA with K.O. on July 11, 2013—the court *sua sponte* determined that there was no indication from K.O's pleadings that a controversy exists with respect to the July 11, 2013 MLA, and that any controversy as to this MLA was therefore abstract or hypothetical, and any order by the court declaring the July 11, 2013 MLA in effect as requested by K.O. would be merely advisory. The court therefore concluded that K.O.'s request for a declaratory judgment on this ground was not ripe and dismissed it without prejudice for lack of subject matter jurisdiction. The court, however, allowed K.O. to amend its pleadings with respect to its request for a declaratory judgment based on the July 11, 2013 MLA.

On August 14, 2014, K.O. filed its Second Amended Counterclaim. The allegations in K.O.'s Second Amended Counterclaim are substantially similar to those in its prior pleadings pertaining to the FCA, breach of contract, and declaratory judgment claims dismissed by the court. As before, K.O. continues to maintain that Fannie Mae's attempt at terminating the May 1, 2011 MLA on June 6, 2013, was not effective. Specifically, K.O. contends that, "[b]ecause Fannie Mae did not correctly terminate the May 1, 2011 MLA on June 6, 2013[,] and because Fannie Mae entered into a new, valid and enforceable MLA relationship with K.O. on July 11, 2013, K.O. had a contractual relationship with Fannie Mae throughout all of 2013 and part of 2014." K.O.'s Second Am. Countercl. 27.

K.O. continues to maintain that Fannie Mae retaliated against it after Frisone reported that other brokers had allegedly engaged in fraudulent conduct. K.O. similarly alleges that Fannie Mae initially reduced the number properties assigned to K.O. and, after June 6, 2013, removed all properties assigned to K.O. and refused to assign any additional properties to it. K.O. also alleges for the first time that Fannie Mae's decision not to renew the July 11, 2013 MLA, after it expired by its own terms, was done in retaliation for Frisone's reports of alleged fraud and policy violations. Instead of contending that Fannie Mae's allegedly retaliatory conduct violates the FCA, K.O. now asserts that Fannie Mae's allegedly retaliatory conduct violates Fannie Mae's Non-Retaliation Policy, which according to K.O., is incorporated by reference into both MLAs and is therefore part of the parties' contract. K.O. therefore contends that Fannie Mae breached the May 1, 2011 and July 11, 2013 MLAs when it retaliated against K.O. in violation of the Non-Retaliation Policy.

On August 22, 2014, K.O. filed a motion for leave to further amend its pleadings to add a counterclaim for breach of contract, which Fannie Mae opposes on the ground that the proposed amended pleading and contract claim is futile and duplicative of K.O.'s pending request for declaratory judgment. On September 12, 2014, Fannie Mae moved to dismiss K.O.'s Second Amended Counterclaim and moved to strike K.O.'s expert witness designations for attorney's fees and damages. On November 14, 2014, K.O. filed its Motion for Partial Summary Judgment, contending that Fannie Mae is not entitled to the declaratory relief sought because the June 6, 2013 letter was insufficient under Texas law to terminate the parties' May 1, 2011 MLA.

## II.    Motion to Dismiss and Summary Judgment Standards

### A.    Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th

Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial

of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof

to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

### B.    Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute

as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas

Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine"

if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary

judgment, the court is required to view all facts and inferences in the light most favorable to the

nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift

Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility

determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v.

Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the

nonmoving party's case, the party opposing the motion must come forward with competent summary

judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus.

Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden

of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative

defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense

to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)

(emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita*, 475 U.S. at 587.  (citation omitted).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id*.  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

III.     Analysis

   A.      Fannie Mae's Motion to Dismiss K.O's Remaining Counterclaim

           1.      Scope of Allowed Amendment

   Fannie Mae first contends that K.O.'s amended counterclaim exceeds the scope of that

allowed by the court because it includes a claim and allegations based on the May 1, 2011 MLA

previously dismissed by the court:

> [K.O.'s] claims and allegations with respect to the 2011 MLA are beyond the
> scope of the authorization for amendment provided by this Court in its Memorandum
> Opinion and Order. In that order, the Court stated that it would "allow K.O. to amend
> its pleadings with respect to its request for declaratory judgment based on the July 11,
> 2013 MLA." Order, p. 17 (emphasis added). The Court repeated that authorization,
> and its limited scope, at least twice thereafter. *See id.*, p. 18. Where the Amended
> Counterclaim addresses matters other than "the July 11, 2013 MLA," it transgresses
> both this Court's order and FED. R. CIV. P. 15(a)(2).
>
> Second, the Court restricted the scope of any authorized amendment to the
> 2013 MLA for a reason. The Court dismissed KO's original Declaratory Judgment
> Act claim to the extent it addressed the 2011 MLA because it found that such issues
> "will be resolved as part of other claims in the lawsuit"—specifically, Fannie Mae's
> claim for declaratory judgment that it properly terminated the 2011 MLA. *Id.*, pp.
> 16-17. For this same reason, KO's renewed Declaratory Judgment Act allegations
> with respect to the 2011 MLA should be dismissed, as well.

Pl.'s Mot. to Dismiss 9.

   K.O. responds that its second amended counterclaim does not seek relief under the May 1,

2011 MLA:

> While K.O. includes some references to the May 1, 2011 MLA in its Second
> Amended Counterclaim, the text of the declaratory judgment claim clarifies that the
> relief sought relates only to the July 11, 2013 MLA.  If there is any doubt or
> confusion about this point, K.O. states that the declaratory judgment claim in the
> Second Amended Counterclaim relates only to the July 11, 2013 MLA as allowed by
> the Court's Memorandum Opinion and Order. (Dkt. #49).

K.O.'s Resp. to Pl.'s Mot. to Dismiss 2 (footnote omitted).

**Memorandum Opinion and Order - Page 11**

Notwithstanding K.O.'s clarification, the court concludes that K.O.'s amended pleadings, while creative, far exceed the scope of amendment previously allowed by the court.  K.O. previously sought a declaratory judgment, contending that the June 6, 2013 termination notice sent by Fannie Mae did not terminate the May 1, 2011 MLA.  The court, however, dismissed this request for a declaratory judgment regarding the May 1, 2011 MLA after concluding that it was the mirror image of the declaratory judgment sought by Fannie Mae.[3]  The court also dismissed with prejudice all of K.O.'s other counterclaims based on alleged breach of contract and retaliation theories and only permitted K.O. to amend its request for declaratory judgment with respect to the July 11, 2013 MLA.

K.O.'s amended request for a declaratory judgment is based to some extent on the July 11, 2013 MLA but focuses largely on the May 1, 2011 MLA. In response to Fannie Mae's prior motion to dismiss, K.O. offered to provide the court with a copy of the July 11, 2013 MLA; however, it again attaches a copy of the May 1, 2011 MLA to its Second Amended Counterclaim that should pertain only to the July 11, 2013 MLA.  K.O. also dedicates most of the first twenty-six pages of its thirty-page amended pleading to alleged events and retaliatory conduct that occurred *before* the parties entered the July 11, 2013 MLA.  K.O. alleges no less than twelve times in its Second Amended Counterclaim (as it did in its prior pleadings) that Fannie Mae's June 6, 2013 attempt at terminating the May 1, 2011 MLA was not legally effective and did not terminate this MLA.  *See* K.O.'s Second Am. Countercl. 23-30.

---

[3] The court previously indicated that it was dismissing with prejudice K.O.'s request for a declaratory judgment with respect to the May 1, 2011 MLA because it was the mirror-image of the declaratory judgment sought by Fannie Mae; however, as herein explained, the court has determined that Fannie Mae's request for a declaratory judgment should be dismissed without prejudice.  The court therefore concludes that K.O.'s mirror-image request for a declaratory judgment with respect to the May 1, 2011 MLA should also be dismissed without prejudice since no decision on the merits will have been made regarding Fannie Mae's requested declaratory judgment relief.  The court's determination in this regard will be reflected in the final judgment entered in this case.

K.O. also blurs the distinction between the two MLAs by: (1) referring to the MLAs as "the MLA"; (2) defining the parties' "contractual agreement" or "contractual relationship" as including the July 11, 2013 MLA *and priors MLAs*; and (3) contending that Fannie Mae "breached this contractual relationship" when it retaliated against K.O. in violation of the Non-Retaliation Policy *before* and after the July 11, 2013 MLA became effective. *See id.* at ¶¶ 70, 71, 74, and 80 ("Because Fannie Mae did not correctly terminate the May 1, 2011 MLA on June 6, 2013[,] and because Fannie Mae entered into a new, valid and enforceable **MLA relationship** with K.O. on July 11, 2013, K.O. had a **contractual relationship** with Fannie Mae throughout all of 2013 and part of 2014"; "A dispute exists whether Fannie Mae breached this **contractual relationship** and retaliated against K.O. for its protected activity in violation of its contractual promises to K.O. through Fannie Mae's Non-Retaliation Policy"; "K.O. asks the Court to declare that the Non-Retaliation Policy is part of the **contractual agreement** between K.O. and Fannie Mae"; "Fannie Mae retaliated against K.O. as it relates to the July 11, 2013 MLA (**and prior MLA Agreements**).") (emphasis added).

In effect, K.O. is attempting to revive its previously dismissed statutory and common law claims by repackaging the claims into a new breach of contract theory under the Texas DJA based on Fannie Mae's allegedly retaliatory conduct and piggy-backing them onto its only remaining counterclaim and request for declaratory judgment regarding the July 11, 2013 MLA. Under this new theory, Plaintiff maintains that, because Fannie Mae's attempt at terminating the May 1, 2011 MLA was not effective under Texas law, and because Fannie Mae "renewed" the May 1, 2011 MLA by entering the July 11, 2013 MLA, the parties' contract spans the entire period that both MLAs were in effect and encompasses all of the retaliatory conduct that allegedly occurred during that time. The court, however, previously dismissed K.O.'s request for a declaratory judgment based on its

contention that Fannie Mae's June 6, 2013 termination of the May 1, 2011 MLA was not effective, and K.O. did not seek leave before filing its Second Amended Counterclaim to include another claim based on the May 1, 2011 MLA.  Moreover, as herein discussed, K.O. has not shown good cause to do so long after the expiration of the March 27, 2014 deadline for amendment of pleadings, and any such amendment would be futile and unnecessarily delay the resolution of this litigation.

The court therefore **strikes** Exhibit 3 to K.O.'s Second Amended Complaint (the May 1, 2011 MLA) and all allegations in K.O.'s Second Amended Counterclaim that pertain to the May 1, 2011 MLA as indicated in the Second Amended Counterclaim attached to this memorandum opinion and order as "Attachment A." In addition, the court will construe all references to the MLA in K.O.'s pleadings that were not stricken by the court as referring to the July 11, 2013 MLA. Likewise, the court only addresses the parties' substantive arguments in the context of the July 11, 2013 MLA, not the May 1, 2011 MLA.

## 2.     Declaratory Judgment Counterclaim Based on July 11, 2013 MLA

### a.     The Parties' Contentions

Fannie Mae next contends that K.O.'s remaining counterclaim for declaratory judgment regarding the July 11, 2013 MLA should be dismissed because K.O. acknowledges that the Non-Retaliation Policy that forms the basis of this counterclaim was not communicated or provided to K.O. prior to this litigation.  Based on this reasoning and its contention that the Non-Retaliation Policy is not specifically referenced or plainly referred to in either the MLA or the REO Sales Guide, Fannie Mae contends that the Non-Retaliation Policy was not incorporated into the July 11, 2013 MLA.  For support, Fannie Mae relies on *Bob Montgomery Chevrolet, Incorporated v. Dent Zone Companies*, 409 S.W.3d 181, 188-90 (Tex. App.—Dallas  2013, no pet.), for the proposition that:

"Plainly referring to a document requires more than merely mentioning the document. . . . For an incorporation by reference to be effective, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.".  Pl.'s Reply 4 (citations omitted).  Fannie Mae therefore contends that, under Texas law, the Non-Retaliation Policy relied on by K.O. was not part of the parties' contract.

Fannie Mae further asserts that, even assuming that the Non-Retaliation Policy is incorporated by reference into the July 11, 2013 MLA as K.O. contends, it would impose obligations on K.O., not Fannie Mae, because the REO Sales Guide upon which K.O. bases its incorporation argument prescribes expected performance and conduct by brokers and does not impose any obligations on Fannie Mae.  Fannie Mae contends that K.O. acknowledges as much in paragraph 76 of its amended pleadings.

Finally, Fannie Mae contends that K.O.'s request for declaratory relief based on alleged violations of the Non-Retaliation Policy and breaches of the July 11, 2013 MLA necessarily fails because: (1) Fannie Mae expressly retained the right under the July 11, 2013 MLA to terminate the MLA without cause; (2) Fannie Mae had complete discretion under the July 11, 2013 MLA whether to assign or withdraw property listings; and (3) Fannie Mae had no obligation under the July 11, 2013 MLA to renew this or any MLA.  With respect to the foregoing, Fannie Mae asserts:

> [W]hile a statutory prohibition against retaliation or discrimination might be argued to abridge Fannie Mae's exercise of its discretionary rights under the contract, KO has pleaded nothing to suggest that a general non-retaliation policy in the MLA[]—even if it were part of th[e] MLA[], and it was not—would control over and constrain the specific, unequivocal discretionary rights set forth in that same contract regarding termination, renewal, and assignment of properties.

Pl.'s Mot. to Dismiss 3 n.2.

**Memorandum Opinion and Order - Page 15**

K.O. responds that, contrary to Fannie Mae's assertion, the July 11, 2013 MLA and the

Non-Retaliation Policy impose duties on both K.O. and Fannie Mae, and the Non-Retaliation Policy

is incorporated by reference into and became part of the July 11, 2013 MLA between K.O. and

Fannie Mae.  According to K.O., because the Non-Retaliation Policy was incorporated by reference

into the REO Sales Guide and MLA, it was communicated to K.O. and became part of the parties'

contractual agreement even though K.O. did not receive a copy of the policy until it was produced

by Fannie Mae in this litigation.  Specifically, K.O. asserts that the Non-Retaliation Policy was

incorporated by reference into the parties' agreement because: (1) the July 11, 2013 MLA provides

that the parties' agreement includes the REO Sales Guide and "all other documents incorporated into

the Agreement by reference"[4]; and (2) the REO Sales Guide in turn incorporates the Non-Retaliation

Policy by requiring brokers to comply with "all" of Fannie Mae's policies.  K.O.'s Resp. to Pl.'s

Mot. to Dismiss 2-3.  K.O. contends that "[b]y using the word 'all,' Fannie Mae included the

Non-Retaliation Policy within the REO Sales Guide as a policy with which compliance is required."

*Id.*

K.O. contends that *Bob Montgomery Chevrolet*, in which the Dallas Court of Appeals

determined that the document at issue was not incorporated by reference into the parties' agreement,

is factually distinguishable because the document in that case included terms that were merely

informative rather than additional binding terms.  K.O. contends that, unlike *Bob Montgomery

Chevrolet*, the REO Sales Guide makes clear that brokers such as it were required to comply with

---

[4] K.O.'s Resp. to Pl.'s Mot. to Dismiss 2 (quoting Ex. 3 to K.O.'s Second Am. Countercl. at FM-KO-001010).

all Fannie Mae policies.  By way of example, K.O. points to the following sections and language in the REO Sales Guide:

> In the Matrix of Fannie Mae's Business Relationships and Responsibilities, a Listing Agent (Broker)'s Roles and Responsibilities include "Compliance with and ensures Agent compliance with all Fannie Mae policies, procedures, critical functions and philosophies. . . ."
>
> The Introduction tells Fannie Mae Brokers that "You are expected to consistently and accurately follow both the letter and spirit of all corporate policies."
>
> In the portion of the Introduction that deals with Fraud Prevention and Detection, Fannie Mae again tells the Broker it is expected to "consistently and accurately follow both the letter and spirit of all Fannie Mae policies, procedures, functions, guidelines, and philosophies."

*Id.* at 7-8 (footnotes omitted).  Based on the foregoing, K.O. asserts that the reference in the REO Sales Guide to "all" Fannie Mae policies could not have been more specific, and that this plain language shows that the parties intended for "all" Fannie Mae policies to become part of the agreement between them even though the Non-Retaliation Policy is not referred to by name in the REO Sales Guide.  K.O. contends that the "plainly refers" incorporation by reference standard set forth in *Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex. 1968), as applied in *In re Prudential Insurance Company of America*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding) and *Bob Montgomery Chevrolet*, is satisfied in this case because the Texas Supreme Court has explained that the language used to incorporate a document is not important, and the REO Sales Guide plainly refers to the Non-Retaliation Policy by requiring brokers to comply with all Fannie Mae policies.

Additionally, K.O. contends that Fannie Mae's designation of the Non-Retaliation Policy as "Confidential" in this litigation and filing it under seal was done in an effort to hide the policy and its terms from brokers:

The written Non-Retaliation Policy was not produced to K.O. until August 1, 2014. Even now, Fannie Mae has gone to great lengths to prevent the Non-Retaliation Policy from becoming a part of the public record by designating it as "Confidential," requiring its filing to be under seal. Why Fannie Mae does not want the public or its other REO brokers to know of the existence of and specific terms of the Non-Retaliation policy is a mystery. Fannie Mae specifically tells its REO brokers they must report fraud or ethical concerns to it. Yet, Fannie Mae seems bound and determined to hide from the REO brokers any document that protects a REO broker who complies with Fannie Mae's mandate to report fraud and ethics concerns.

K.O.'s Resp. to Pl.'s Mot. to Dismiss 4. K.O. contends that Fannie Mae's decision to designate the policy as confidential is inexplicable given its vice president's public statements regarding Fannie Mae's strong policy prohibiting retaliation against vendors who report fraud.

With respect to K.O.'s contention regarding the confidential designation of the Non-Retaliation Policy, Fannie Mae responds as follows:

> **Fannie Mae is serious about its Non-Retaliation Policy, but that does not make the Policy part of its MLA.**
>
> Finally, KO devotes about a third of its Response to a sermonette, decrying Fannie Mae's designation of the Non-Retaliation Policy as confidential in this litigation and contending that Fannie Mae's arguments against incorporation of that Policy into its MLAs amounts to "offer[ing] no protection to any REO broker (or other vendor) from retaliation when that vendor complains of fraud or ethical concerns …." Response, p. 10; *see id.*, pp. 4-5. But just because Fannie Mae has not chosen to make its Non-Retaliation Policy part of its contracts with brokers does not mean it is not serious about that Policy, or that the Policy "offers no protection" to brokers and others dealing with Fannie Mae. To the contrary, the Policy provides for stringent penalties against Fannie Mae employees that violate it. Non-Retaliation Policy (Confidential Doc. #51), § 6.1. The Policy establishes a framework and procedure for addressing grievances by anyone who believes he or she has been retaliated against. *See id.* § 6.2. That Fannie Mae has elected to make that an internal administrative process, rather than to invite such matters to be taken to the courts every time an outside vendor feels slighted, does not mean Fannie Mae does not enforce or abide by its Non-Retaliation Policy. It simply means KO has no basis for pursuing its grievances, real or imagined, as a contract claim in this Court.

Pl.'s Reply 7.

**Memorandum Opinion and Order - Page 18**

b.        Discussion

The parties' disagreement as to whether Fannie Mae's Non-Retaliation Policy was incorporated by reference into the July 11, 2013 MLA is one of contract interpretation. The parties agree that Texas law applies. Under Texas law, "[a] written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution." *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011). Courts should "give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Dynegy Midstream Servs., Ltd. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). Additionally, "courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

Texas contract law allows a document or provisions from another document to be incorporated into a contract. *Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 665 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). "Documents incorporated into a contract by reference become part of that contract." *In re 24R, Inc*. 324 S.W.3d 564, 567 (Tex. 2010). The Texas Supreme has held that "an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged. The language used is not important provided the document signed . . . plainly refers to another writing." *In re Prudential Ins. Co.*, 148 S.W.3d at 135 (quoting *Owen*, 433 S.W.2d at 166). "The absence of such a reference within the signed document 'shows that the parties did not intend to contract with reference to the other instrument.'" *Trico*

*Marine Servs., Inc. v. Stewart & Stevenson Tech. Servs., Inc.*, 73 S.W.3d 545, 549 (Tex.

App.—Houston [1st Dist.] 2002, orig. proceeding) (quoting *Clutts v. Southern Methodist Univ.*, 626

S.W.2d 334, 336 (Tex. App.—Tyler 1981, writ ref'd n.r.e.)).

Texas courts have interpreted the "plainly refers" requirement as meaning "clearly refers"

and have held that a "mere reference" to another document is not enough to establish a wholesale

incorporation of the referenced document "when the facts and circumstances surrounding the

agreement do not indicate that incorporation was intended." *Al Rushaid v. National Oilwell Varco,*

*Inc.*, 757 F.3d 416, 420 (5th Cir. 2014) (discussing Texas cases); *Berwick v. Wagner*, 336 S.W.3d

805, 809 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("Before one document can incorporate

a second document, the first document must unmistakably make the second document a part of it.

A mere reference to the second document is not an incorporation."); *Tribble & Stephens Co.*, 154

S.W.3d at 665 (concluding that mere reference to another document is insufficient for wholesale

incorporation of the referenced document); *Trico Marine Servs., Inc.*, 73 S.W.3d at 549 (holding that

mere mention of "General Terms and Conditions of Sale" in the Proposal's table of contents, and

again as heading VII, does not plainly refer, as a matter of law, to any separate document" and thus

was insufficient to incorporate referenced General Terms and Conditions).  When, however, the

reference to another document "is clear and the circumstances indicate that the intent of the parties

was incorporation, [Texas] courts have held that a document may be incorporated, even in the

absence of specific language of incorporation." *Al Rushaid*, 757 F.3d at 420 (citing *Gray & Co.*

*Realtors, Inc. v. Atlantic Hous. Found., Inc.*, 228 S.W.3d 431, 436 (Tex. App.—Dallas 2007, no

pet.), which held that Contract of Sale was sufficiently incorporated by reference despite no language

of incorporation because it was explicitly referenced by name six times in the parties' agreement, and the agreement invited the parties to consult the Contract of Sale.

Another consideration in determining whether a document or provisions from another document were intended to be incorporated into a contract is whether the documents were executed at the same time. When "agreements [are] executed at the same time, with the same purpose, and as part of the same transaction, [they] are construed together." *In re Prudential Ins. Co.*, 148 S.W.3d at 135 ; *Jones v. Kelley*, 614 S.W.2d 95 (Tex. 1981) (noting that Texas courts "follow the well established principle that, in order to ascertain the entire agreement between contracting parties, separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together."). This rule of construction, however, does not extend to documents that simply appear to relate to the same transaction. *Owen*, 433 S.W.2d at 167 ("[I]t is difficult to justify the extension of the doctrine of incorporation to permit several writings to be read together simply because it appears that they relate to the same transaction. . . . The only permissible extension of the doctrine requiring an express reference in the signed paper is where the signed paper at the time of the signature can be shown from its contents to be based on an adoption of a then existing unsigned paper."); *Tribble & Stephens Co.*, 154 S.W.3d at 663.

Here, of the three documents at issue—the July 11, 2013 MLA, REO Sales Guide, and Non-Retaliation Policy—only the July 11, 2013 MLA was signed by the parties. The July 11, 2013 MLA specifically references by name the REO Sales Guide and other documents, but there is no express reference in the July 11, 2013 MLA to the Non-Retaliation Policy. The July 11, 2013 MLA refers only to broker insurance coverage policy requirements and required practices for brokers in developing an adequate Information Security Policy and Password Policy. Pl.'s Mot. to Dismiss

App. 19 and 31.  The absence of any reference in the signed MLA to the Non-Retaliation Policy is an indication that the parties did not intend to incorporate the Non-Retaliation Policy into their agreement.  *See Trico Marine Servs., Inc.*, 73 S.W.3d at 549.  Additionally, while the REO Sales Guide contains references to unspecified policies that brokers are expected to follow, it does not specifically refer by name to the Non-Retaliation Policy.  Likewise, the Non-Retaliation Policy does not reference in any respect the REO Sales Guide or any MLA.

Also notable is the inclusion of a provision in the July 11, 2013 MLA in which Fannie Mae agreed to notify K.O. of any modifications to the "REO Sales Guide, each of the Supplemental Documents included in the Supplemental Documents Package and any documents or forms referenced in any of the foregoing."  Pl.'s Mot. to Dismiss App. 23.  K.O. acknowledges that Fannie Mae never provided K.O. with a copy of the Non-Retaliation Policy prior to this litigation.  The Non-Retaliation Policy, however, reflects that there were a number or revisions to the document during the time in question.  Accordingly, this is further evidence that the parties did not intend to incorporate the Non-Retaliation Policy into their agreement under the July 11, 2013 MLA.

Moreover, the July 11, 2013 MLA and Non-Retaliation Policy were not executed at the same time, with the same purpose, and as part of the same transaction, and there is no indication that the Non-Retaliation Policy relates in any way to the parties' execution of the July 11, 2013 MLA. Notably, the March 2012 REO Sales Guide and July 11, 2013 MLA both predate the October 2, 2013 version of the Non-Retaliation Policy relied on by K.O.  Thus, neither the July 11, 2013 MLA nor the March 2012 REO Sales Guide could have incorporated this version of the Non-Retaliation Policy.

Even assuming that a prior similar version of the Non-Retaliation Policy was in effect as of July 11, 2013, when the parties entered into the July 11, 2013 MLA, the general reference to unspecified policies or "all" policies in the March 2102 REO Sales Guide does not clearly evince an intent by the parties to make the Non-Retaliation Policy part of the parties' contract, particularly when read in context of the three documents. The Non-Retaliation Policy itself consists primarily of nonbinding language and indicates that its main purpose is to merely "*explain* Fannie Mae's prohibition against retaliation and to *encourage* the timely reporting of compliance and ethics concerns." K.O.'s Mot. to Dismiss App. 6 (Doc. 55) (emphasis added). In addition, each page of the Non-Retaliation Policy is designated as "Confidential" and for "Internal Distribution." *Id.* at App. 3-9.

Further, while the Non-Retaliation Policy refers extensively to Fannie Mae's Code of Conduct and states that this "Code requires employees to report, for example, compliance and ethics concerns . . . [and] prohibits managers from retaliating against such employees," *Id.* at App. 9, K.O. acknowledges that Fannie Mae's Code of Conduct only applied to employees, not independent contractors such as K.O. K.O.'s Second Am. Countercl. 12 n.1. As noted by K.O, the Non-Retaliation Policy also states that it "applies to all Fannie Mae employees *and others* who *may* raise compliance and ethics concerns about Fannie Mae's operations." K.O.'s Mot. to Dismiss App. 6 (Doc. 55) (emphasis added). Nowhere, however, does the Policy state that those other than Fannie Mae employees must report such concerns as part of their contractual obligations or otherwise. Regardless of whether K.O. was required to comply with Fannie Mae's Non-Retaliation Policy, neither the policy nor the other documents state that a violation of the policy will constitute a breach

of contract by a broker or Fannie Mae.  The Policy simply provides an internal process for reporting and investigating alleged retaliation.

Finally, because the REO Sales Guide consists only of broker requirements and imposes no obligations on Fannie Mae, the few references in the REO Sales Guide to brokers' compliance with Fannie Mae's policies is insufficient to establish the wholesale incorporation of the Non-Retaliation Policy as proposed by K.O.  At most, the references in the REO Sales Guide to policies would only support incorporation of Fannie Mae's policies to the extent that they require broker compliance. *See Tribble & Stephens Co.*, 154 S.W.3d at 665.  To interpret the REO Sales Guide otherwise would result in an impermissible expansion of the parties' agreement and Fannie Mae's obligations to K.O. under the July 11, 2013 MLA and REO Sales Guide.  Such an interpretation would also conflict with the plain language of the July 11, 2013 MLA, which expressly allows Fannie Mae to terminate the parties' agreement without cause and gives Fannie Mae complete discretion over property assignments and MLA renewals.  Accordingly, the court concludes that the Non-Retaliation Policy was not incorporated into the July 11, 2013 MLA.  Because K.O.'s request for a declaratory judgment with respect to the July 11, 2013 MLA is premised on the Non-Retaliation Policy, it fails as a matter of law.  K.O. has therefore failed to state a claim under the Texas DJA upon which relief can be granted, and Fannie Mae is entitled to dismissal of this claim.

### B.     K.O.'s Motion for Partial Summary Judgment

K.O. contends that Fannie Mae is not entitled to the declaratory judgment relief requested because it did not follow the proper procedure to terminate the May 1, 2011 MLA between it and K.O.  Specifically, K.O. reasons that Fannie Mae's June 6, 2013 letter to Frisone purporting to terminate the May 1, 2011 MLA as of June 6, 2013, pursuant to section 7 of the May 1, 2011 MLA,

**Memorandum Opinion and Order - Page 24**

did not terminate that MLA because: "The letter that Fannie Mae sent identified the MLA to be terminated as the MLA 'between Karen Frisone and Fannie Mae dated May 1, 2011.' No such MLA exists [because the MLA is between K.O. and Fannie Mae, not Frisone and Fannie Mae]. Because no such MLA exists, there is no such contract to terminate." K.O.'s Summ. J. Br. 22.  K.O. therefore asserts that, while the MLAs allow Fannie Mae to terminate the parties' agreement without cause, its June 6, 2013 attempt at terminating the May 1, 2011 MLA was not effective under Texas law because the letter did not provide clear and unambiguous notice of termination.[5] K.O. further asserts that Fannie Mae's entering a new MLA with K.O effective July 11, 2013, bolsters its argument that the May 1, 2011 MLA was not terminated on June 6, 2013, and Fannie Mae recognized as much. K.O. contends that Fannie Mae would not have entered a new July 11, 2013 MLA if it had terminated the May 1, 2011 MLA on June 6, 2013.

Fannie Mae responds that its June 6, 2013 letter was sufficient to apprise K.O. that Fannie Mae was exercising its option to terminate the May 1, 2011 MLA without cause.  Fannie Mae relies on a number of cases, contending that, "[w]hile some authorities invoke the 'clear and unambiguous' mantra, the test actually applied by most courts is embodied in the second case cited by KO—*i.e.*, is the notice 'sufficiently clear and unequivocal to clearly apprise the other party of the action being taken.'" Pl.'s Summ. J. Resp. 9 (quoting *Atlantic Banana*, 493 F.2d at 560 n.3).  Fannie Mae asserts that, in determining whether a notice of termination was sufficiently clear to apprise the other party of the action being taken, courts can consider the post-notice conduct of a party.  Pl.'s Summ. J.

---

[5] For support, K.O. relies on the following cases to support its contention that termination of a contract must be clear and unambiguous: *Vinson Minerals, Limited v. XTO Energy, Incorporated*, 335 S.W.3d 344, 358 (Tex. App.—Fort Worth 2010, pet. denied) ("Specifically, written notice seeking to invoke the harsh remedy of termination or forfeiture must be clear and unambiguous); *Atlantic Banana Company v. Standard Fruit & S.S. Company*, 493 F.2d 555 n.3 (5th Cir. 1974) ("The district court properly concluded that notice of termination of a contract must be sufficiently clear and unequivocal to clearly apprise the other party of the action being taken.").

Resp. 9 (citing *LA-Nevada Transit Co. v. Marathon Oil Co.*, 985 F.2d 797, 800 (5th Cir. 1993)).

Fannie Mae contends that the evidence in this case indicates that K.O. understood that the June 2013 letter terminated the 2011 MLA between Fannie Mae and K.O. because Frisone, the managing broker and owner of K.O., admits as follows: "[W]hen I received the letter from Fannie Mae on June 6, 2013, . . . I believed that Fannie Mae had terminated K.O.'s MLA agreement." Pl.'s Summ. J. Resp. 9-10 (quoting Frisone Decl. ¶ 52, K.O.'s App. 21). Fannie Mae further asserts that, almost immediately after receiving the June 6, 2013 letter, Frisone e-mailed Fannie Mae on June 6, 2013, to complain about being fired from Fannie Mae. Pl.'s Summ. J. Resp. 9-10 (citing Pl.'s App. 16-17). In addition, Fannie Mae contends that Frisone's conduct in quickly retaining an attorney and demanding on July 16, 2013 (through her attorney), that Fannie Mae retain all documents pertinent to "the circumstances surrounding the termination of Ms. Frisone's contract with Fannie Mae," demonstrates that K.O. and Frisone knew and understood that the June 6, 2013 letter terminated K.O.'s 2011 MLA with Fannie Mae. Pl.'s Summ. J. Resp. 10 (quoting Pl.'s App. 19-22). Finally, regarding K.O.'s contention that, "Fannie Mae itself recognized that the termination was not effective because it completed the renewal of K.O.'s MLA on July 11, 2013," Fannie Mae contends that its decision to enter the July 11, 2013 MLA does not establish that its termination letter was ineffective with respect to the 2011 MLA. Fannie Mae asserts that "aside from this purported 'renewal,' [K.O. acknowledges that] Fannie Mae's conduct was consistent with an understanding that the Termination Letter had terminated its [2011] MLA relationship with KO." Pl.'s Summ. J. Resp. 11. For support, Fannie Mae points to the following:

> KO pleads that "after June 6, 2013, Fannie Mae . . . remov[ed] all properties then assigned to K.O." KO Second Amended Counterclaim ¶ 64.

> In her Declaration, Frisone testifies that immediately after delivery of the Termination Letter, Fannie Mae "reassigned my few remaining assets," and "locked me out of the AMN (Asset Management Network) required for servicing." Frisone Dec. ¶ 48 (KO Appx. 0020).

*Id.* Fannie Mae therefore argues that the purported "July 11, 2013 'renewal' MLA provides no basis on which KO's MPSJ may be granted as a matter of law." *Id.*

In its reply, K.O. maintains that, while Frisone understood that the 2011 MLA had been terminated, she always believed that the termination was retaliatory and improper. K.O. further asserts that after Fannie Mae renewed the MLA, "the logical conclusion to Ms. Frisone was that Fannie Mae, in response to her complaints of retaliation, had decided internally that the attempted termination of the MLA was improper and not effective. Otherwise, why else would Fannie Mae renew K.O.'s MLA?" K.O.'s Summ. J. Reply 4. K.O. also notes that Fannie Mae has not provided the court with any "alternative explanation for its renewal of K.O.'s MLA in July 2013." *Id.* In addition, K.O. asserts that "Fannie Mae made no attempt to terminate the July 2013 MLA, and let it expire on its own one year later." *Id.*

A notice of termination is effective if it is "sufficiently clear to apprise the other party of the action being taken." *LA-Nevada Transit Co.*, 985 F.2d at 800 (citing *Atlantic Banana Co.*, 493 F.2d at 560). In addition to the language used in a notice of termination, A party's conduct after receipt of a notice of termination may be considered in making this determination. *See id.* (concluding that "LNT obviously understood the notice [of termination] to apply to the June periods because it included payments for the June deficiencies along with its September payments.").

After reviewing Fannie Mae's notice of termination letter, the court determines that it is sufficiently clear to apprise K.O. that the May 1, 2011 MLA was being terminated effective June 6,

2013, pursuant to section 7 of the MLA, which provides:  "Fannie Mae or Broker may terminate the Agreement at any time with or without Cause upon written notice to the other party, effective on the date specified in such notice or immediately if no date is specified."  K.O.'s Summ. J. App. 52.  The letter's reference to the MLA "between Karen Frisone and Fannie Mae dated May 1, 2011" is insufficient to establish ambiguity in the notice of termination given that K.O.'s own evidence indicates Frisone signed the May 1, 2011 MLA as K.O.'s authorized signatory and managing broker-owner; and acted on behalf of K.O. with respect to the matters at issue in this case.  Frisone also repeatedly refers to K.O. and herself interchangeably in her declaration.  For example, Frisone refers to K.O. as "my company" and "my business" and K.O.'s assets as "my few remaining assets."  *See* K.O.'s Summ. J. App. 5, 10, 11, 15, 20, 21, 22, and 25.  Frisone also refers in her declaration to the July 11, 2013 MLA as "my new, fully executed MLA."  *Id.* at 22.

Moreover, Frisone's conduct after receiving the letter indicates that she understood the letter to mean that the May 1, 2011 MLA was terminated effective June 6, 2013, and Frisone acknowledges as much in her declaration.  While K.O. contends, based on the July 11, 2013 MLA, that "the logical conclusion to Ms. Frisone was that Fannie Mae, in response to her complaints of retaliation, had decided internally that the attempted termination of the MLA was improper and not effective," there is no evidence that Frisone construed the July 11, 2013 MLA as an indication that Fannie Mae had reconsidered its prior decision to terminate the May 1, 2011 MLA.  Nor is there any evidence to suggest that Fannie Mae's decision with respect to the July 11, 2013 MLA was in any way related to its termination of the May 1, 2011 MLA.

Additionally, K.O.'s unsupported assertion in this regard, is inconsistent with and undermined by its allegations and Frisone's statements in her declaration that Fannie Mae removed

**Memorandum Opinion and Order - Page 28**

all properties assigned to K.O. after June 6, 2013, and refused to assign any additional properties to K.O. after entering the new MLA.  That Frisone may have believed that Fannie Mae's termination of the May 1, 2011 MLA was retaliatory or improper under the parties' contract because of the Non-Retaliation Policy is irrelevant because K.O. did not move for summary judgment on this ground and expressly limited its summary judgment motion to the narrow issue of whether Fannie Mae's June 6, 2013 letter provided sufficiently clear notice under Texas law that Fannie Mae was terminating the May 1, 2011 MLA with K.O. as of June 6, 2013.  *See* K.O.'s Summ. J. Br. 21 n.106.

K.O.'s reliance on *Vinson Minerals, Ltd.* is also misplaced, as that case involved the termination of oil and gas leases, to which the *Vinson Minerals, Ltd.* court explained that a strong presumption against forfeiture exists in cases involving oil and gas leases, as well as those involving acceleration or foreclosure, none of which are at issue in this case.  *Vinson Minerals, Ltd.*, 335 S.W.3d at 358.  Moreover, unlike *Vinson Minerals, Ltd.*, the notice in this case did not send a mixed message by referencing settlement negotiations or potential continuation of the May 1, 2011 MLA. The termination notice instead unequivocally stated that the May 1, 2011 MLA was terminated effective June 6, 2013.  Fannie Mae's subsequent decision to enter a new MLA with K.O. on July 11, 2013, is insufficient to create an ambiguity with respect to the earlier termination of the May 1, 2011 MLA because the new MLA did not reference the prior May 1, 2011 MLA or equivocate regarding the prior termination of that MLA.  Accordingly, for all of these reasons, the court concludes that Fannie Mae's June 6, 2013 letter was sufficiently clear to give K.O. notice that the May 1, 2011 MLA was terminated as of June 6, 2013, and K.O. is not entitled to partial summary judgment on this ground.

### C.      K.O.'s Motion for Leave to Amend Pleadings

K.O. seeks leave to amend its pleadings to add a counterclaim for breach of contract based on Fannie Mae's Non-Retaliation Policy.  Fannie Mae opposes the motion, contending that K.O. has not shown good cause because it waited five months after the pleading deadline before seeking leave to amend its pleadings to add the proposed contract claim.  Fannie Mae asserts that, while K.O. contends that Fannie Mae did not produce the Non-Retaliation Policy that is the basis for its new claim, it fails to explain why it did not request production of the policy before expiration of the pleading amendment deadline, even though it was aware of the policy's existence.  Fannie Mae also contends that the proposed amendment is futile because it is substantially identical to its remaining request for a declaratory judgment and is based on the same flawed incorporation by reference theory.  K.O. replies that, while its proposed contract claim shares some similarities, it is not identical to its existing request for a declaratory judgment that is the subject of Fannie Mae's motion to dismiss.  K.O. asserts that good cause exists because Fannie Mae did not produce the Non-Retaliation Policy until August 1, 2014.  Finally, K.O. disagrees with Fannie Mae's futility argument.

K.O.'s request to amend its pleadings would require modification of the court's scheduling order because the deadline for amendment of pleadings expired March 27, 2014.  Before the court can modify a scheduling order, the movant must first show "good cause" for failure to meet the scheduling order deadline under Rule 16(b).  *S & W Enters., L.L.C. v. Southwest Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003).  A scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b).  The good cause standard requires the "party seeking relief to show that the deadlines [could not] reasonably be met despite the diligence of the party needing the extension."  *S & W Enters.*, 315 F.3d at 535 (citation omitted).  In deciding whether

to allow an amendment to the scheduling order, a court considers: (1) the explanation for the party's failure to meet the deadline; (2) the importance of the amendment to the scheduling order; (3) potential prejudice if the court allows the amendment; and (4) the availability of a continuance to remedy such prejudice. *Id.* (internal quotation marks, brackets, and citations omitted).

The court finds unpersuasive K.O.'s argument that the Non-Retaliation Policy was not produced until August 1, 2014, because, as noted by Fannie Mae, K.O. fails to explain why it was unable to serve discovery requests regarding the policy sooner. This case was filed on July 17, 2013. K.O. asserts in support of its motion for leave that in September 2013, Frisone attended a conference at which Fannie Mae's vice president confirmed that Fannie Mae had a policy that prohibited retaliation. The issue of a non-retaliation policy was first raised by K.O. on November 27, 2013, in support of its original counterclaims. K.O.'s Original Answer and Countercl. ¶ 30. According to that pleading by K.O., Frisone was aware as of September 2012 that Fannie Mae had a non-retaliation policy.

Even assuming that K.O. was not aware or did not confirm the existence of Fannie Mae's Non-Retaliation Policy until September 2013, it waited another several months until March 21, 2014, before serving its First Request for Production of documents to Fannie Mae. K.O. attempts to shift the blame to Fannie Mae by contending that Fannie Mae delayed in producing requested documents; however, it acknowledges that it could have served its discovery requests earlier. Additionally, it fails to explain why it did not move to compel production of the policy. Based on the foregoing, the court concludes that K.O. has not shown good cause, that is, that K.O. could not have reasonably met the pleading amendment deadline despite the exercise of diligence.

Moreover, the proposed contract claim based on alleged retaliation and incorporation of the Non-Retaliation Policy is substantially the same as K.O.'s request for a declaratory judgment with respect to the July 11, 2013 MLA, which the court determined fails as a matter of law.  While the proposed contract claim is also based on K.O.'s allegations that Fannie Mae breached the May 1, 2011 MLA by retaliating against K.O., which the court struck, K.O. has not shown why it could not have included this claim in its earlier pleadings or sought leave to do so before expiration of the pleading amendment deadline. Further, because K.O.'s proposed contract claim with respect to the May 1, 2011 MLA is also predicated on incorporation of the Non-Retaliation Policy, the proposed amendment would likewise be futile and unnecessarily delay resolution of this litigation.  Having determined that good cause has not been shown to revive the previously expired pleading deadline and that the requested amendment would be futile, the court need not address the four factors previously mentioned.  The court therefore **denies** K.O. Realty, Inc.'s Motion for Leave to Amend Complaint (Doc. 54).

### D.       Fannie Mae's Motion to Strike Expert Designations

The court's ruling on Fannie Mae's motion to dismiss K.O.'s remaining counterclaim and K.O.'s motion for leave to further amend its pleadings to add a counterclaim moots Fannie Mae's motion to strike K.O.'s expert designations.  Accordingly, the court **denies as moot**  Fannie Mae's Motion to Strike Expert Witness Designations (Doc. 61).

### E.       Dismissal Without Prejudice of Fannie Mae's Declaratory Judgment Claim

The only claim remaining in this case is Fannie Mae's request for declaratory judgment. Fannie Mae asserts that the parties' motions highlight the limited nature or mootness of the issues remaining.  Fannie Mae therefore suggests that, if the court grants its motion to dismiss K.O.'s

remaining counterclaim and denies K.O.'s motion for leave to further amend its pleadings, judicial economy will be served, and "it would be in the best interest of all concerned for the Court to exercise its discretion to decline to entertain, and to dismiss [its] declaratory judgment claims and thereby end this case [without ruling on the merits of its request for declaratory judgment]." K.O. does not oppose the dismissal of Fannie Mae's request for declaratory judgment if the court denies its motion for partial summary judgment.

The court construes Fannie Mae's recommendation as a motion to dismiss without prejudice its request for declaratory judgment. Given that K.O. does not oppose Fannie Mae's request in this regard, the court **grants** Fannie Mae's motion and **dismiss without prejudice** its request for declaratory judgment pursuant to Federal Rule of Civil Procedure 41(a)(2).

## IV.    Conclusion

For the reasons herein stated, the court **grants** Fannie Mae's Motion to Dismiss K.O. Realty, Inc.'s First Amended Counterclaims (Doc. 59) and **dismisses with prejudice** K.O.'s request for a declaratory judgment with respect to the July 11, 2013 MLA; **denies** K.O. Realty, Inc.'s Motion for Partial Summary Judgment (Doc. 73); **denies** K.O. Realty, Inc.'s Motion for Leave to Amend Complaint (Doc. 54); and **denies as moot** Fannie Mae's Motion to Strike Expert Witness Designations (Doc. 61). The court also **grants** Fannie Mae's unopposed motion to dismiss its request for declaratory judgment, and **dismisses without prejudice** its request for declaratory judgment pursuant to Federal Rule of Civil Procedure 41(a)(2). As there are no remaining claims, the court will issue judgment by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 4th day of February, 2015.

Sam A. Lindsay
United States District Judge